**STATE FARM LLOYDS,**
**INC., Appellant,**

v.

**Paula Mallow WILLIAMS and William**
**Scott Wallace, Appellees.**

No. 05–89–00857–CV.

Court of Appeals of Texas,
Dallas.

April 13, 1990.
Rehearing Denied May 29, 1990.

**544**

Michael W. Huddleston, Cowles & Thompson, Dallas, Joseph W. Stewart, Steven R. Pierett, Arlington, for appellant.

Joe H. Jones, Carter, Jones, Magee, Rudberg and Mayes, Dallas, for appellees.

Before ENOCH, C.J., and LAGARDE and THOMAS, JJ.

OPINION

ENOCH, Chief Justice.

State Farm Lloyds, Inc. appeals from a summary judgment granted in favor of Paula Mallow Williams and William Scott Wallace. The case involves the question of liability coverage under a homeowners' insurance policy. We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

On June 20, 1987, Claude F. Fulton shot his wife, Frances Fulton, his stepgranddaughter, Dava Williams Wallace, and his stepdaughter, Paula Mallow Williams. He then shot himself. Paula Williams and Frances Fulton survived the attack, although Frances later died of an unrelated illness. Claude Fulton and Dava Wallace died as a result of their injuries.

In connection with the shootings, Paula Williams and William Scott Wallace (an heir of Dava Wallace) sued both the estates of Claude Fulton and of Frances Fulton. Claude and Frances were insured under a homeowners' policy issued by State Farm, and State Farm defended Frances Fulton's estate. The petition filed by Williams and Wallace against the estates of Claude and Frances alleged that Claude caused the death of Dava Wallace and the personal injuries inflicted on Paula Williams. The petition alleged no acts or omissions on the part of Frances Fulton. With respect to Frances, the petition merely stated that she was married to Claude at the time of the occurrences, and "by reason thereof, both estates have liability for the conduct above set forth."

The trial court awarded judgment in favor of Williams and Wallace against the estates of Claude and Frances, jointly and severally. However, the trial court's judgment included the following:

As concerns Defendant STEVE MALLOW, Independent Executor of the Estate of FRANCES MALLOW FULTON, Deceased, his liability for the aforesaid Judgments can be enforced against only the community property assets in the Estate of FRANCES MALLOW FULTON that were in existence on June 20,

1987. In this connection, the Court finds and holds as a result of the occurrences in question that the liability insurance policy owned by Claude and Frances Fulton was part of the community property of their respective estates.

State Farm refused to pay any part of the judgment against the estate of Frances Fulton. Steve Mallow, as independent executor of Frances's estate, assigned all claims that the estate of Frances Fulton might have against State Farm to Paula Williams and William Wallace. Williams and Wallace then sued State Farm, alleging, among other things, breach of the homeowners' insurance contract. Both sides moved for summary judgment. The trial court granted a partial summary judgment in favor of Williams and Wallace, concluding that the estate of Frances Fulton was an insured under the homeowners' policy and that State Farm was liable under the policy to the extent of the policy limit of $300,000 per occurrence. The court further found that there were two occurrences. The partial summary judgment was severed from the rest of the lawsuit, and all other summary judgment relief sought by the parties was denied. State Farm appeals from this partial summary judgment.

■ In its first point of error, State Farm contends that the trial court erred in granting the partial summary judgment. In its second point, State Farm argues that the trial court erred in granting judgment on the basis that Frances Fulton's estate was insured under the policy and that State Farm had liability under the policy. In reviewing the propriety of the partial summary judgment, we are guided by the rule that a movant is entitled to summary judgment if the summary judgment record shows that there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c).

■ By the terms of the policy, and under the heading "COVERAGE D—PERSONAL LIABILITY," State Farm agreed "[t]o pay on behalf of the Insured all sums which the Insured shall become legally obli-

gated to pay as damages because of bodily injury...." The limit of liability for such coverage (designated as Coverage D) was specified in this manner:

LIMITS OF LIABILITY    COVERAGES

....

$ 300,000    D.  PERSONAL LIABILITY, EACH OCCURRENCE

The policy also contained a severability of interests clause which provided that "[t]he insurance afforded under Coverage D applies separately to each Insured against whom claim is made or suit is brought...."

■ In the absence of ambiguity, insurance contracts are to be interpreted generally as other contracts are interpreted. *Southern Life and Health Ins. Co. v. Simon,* 416 S.W.2d 793, 795 (Tex.1967). The question of whether a contract is ambiguous is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). If a written instrument is worded so that a court can properly give it a certain or definite legal meaning, it is not ambiguous. A contract is ambiguous only when the application of pertinent rules of interpretation results in genuine uncertainty as to which one of two or more meanings is proper. *Id.* at 519; *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 517, 243 S.W.2d 154, 157 (1951). The rule that insurance contracts are to be strictly construed against the insurer and in favor of the insured is applied only in cases of ambiguity. *See Southern Life and Health,* 416 S.W.2d at 795; *Republic Nat'l Life Ins. Co. v. Spillars,* 368 S.W.2d 92, 94 (Tex. 1963). All parts of insurance contracts are to be taken together, and such meaning shall be given to them as will effectuate to the fullest extent the intention of the parties. Courts must interpret the meaning of the language actually used in a contract and give effect to the intention of the parties as expressed in the writing. If the language is plain, it must be enforced as written. *Republic Nat'l Life,* 368 S.W.2d at 94.

Reading the pertinent provisions of the policy together, we determine that the insurance policy provisions quoted above un-

ambiguously provide coverage to an insured who becomes legally obligated to pay money as damages because of personal injury. Moreover, the legal obligation to pay must be based on the *personal liability* of the insured, according to the provisions on coverage and liability limits. There is no genuine uncertainty as to the meaning of these provisions, and they can properly be given a certain or definite legal meaning. We are therefore required to enforce the terms as written.

Having determined what the applicable policy provisions say, we now turn to a review of the judgment. In pertinent part, the judgment states:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that WILLIAM SCOTT WALLACE have and recover Judgment, jointly and severally, of and from MARGARET CHRISTINE FULTON THOMASON AND REX G. ROBERTS, INDEPENDENT EXECUTORS OF THE ESTATE OF CLAUDE F. FULTON, DECEASED, AND STEVE MALLOW, INDEPENDENT EXECUTOR OF THE ESTATE OF FRANCES MALLOW FULTON, DECEASED, Defendants herein, in the total sum of $1,750,000.00; that PAULA MALLOW WILLIAMS have and recover Judgment, jointly and severally, of and from MARGARET CHRISTINE FULTON THOMASON AND REX G. ROBERTS, INDEPENDENT EXECUTORS OF THE ESTATE OF CLAUDE F. FULTON, DECEASED, AND STEVE MALLOW, INDEPENDENT EXECUTOR OF THE ESTATE OF FRANCES MALLOW FULTON, DECEASED, Defendants herein, in the total sum of $2,500,000.00; that these Judgments are to bear interest at the rate of ten per cent (10%) per annum until paid in full; and Plaintiffs are entitled to recovery of all costs of Court incurred herein.

> As concerns Defendant STEVE MALLOW, Independent Executor of the Estate of FRANCES MALLOW FULTON, Deceased, his liability for the aforesaid Judgments can be enforced against only the community property assets in the Estate of FRANCES MALLOW FUL-

TON that were in existence on June 20, 1987. In this connection, the Court finds and holds as a result of the occurrences in question that the liability insurance policy owned by Claude and Frances Fulton was part of the community property of their respective estates.

Earlier paragraphs in the judgment find that the plaintiffs, Williams and Wallace, have been damaged, and the sums awarded correspond to the damages found. The judgment states that Claude Fulton recklessly caused the death of Dava Wallace and the personal injuries of Paula Williams, but it is silent on the question of whether the liability of Frances's estate is based on the personal liability of Frances. It also does not specify whether it operates *in rem* or *in personam* with respect to the sums assessed against the estate of Frances.

■ The same rules of interpretation apply in ascertaining the meaning of judgments as in ascertaining the meaning of other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex.1971); *McLeod v. McLeod*, 723 S.W.2d 777, 779 (Tex.App.—Dallas 1987, no writ); *see Ellis v. Mortgage and Trust, Inc.*, 751 S.W.2d 721, 723 (Tex.App.—Fort Worth 1988, no writ). If the judgment is plain and unambiguous, extrinsic matters may not be considered in order to give the decree a different effect from that expressed by the literal meaning of the words used therein. *McLeod*, 723 S.W.2d at 779; *see Ellis*, 751 S.W.2d at 723. On the other hand, if the judgment is ambiguous, the entire content of the judgment *and the record* should be considered. *See Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987) (per curiam); *Lone Star Cement*, 467 S.W.2d at 404–05. If the language of the judgment is susceptible to more than one interpretation, the one which renders the judgment more reasonable, effective, and conclusive, and which harmonizes it with the facts and the law of the case, should be adopted. *Duff v. Collins*, 225 S.W.2d 213, 215 (Tex.Civ.App.—Austin 1949, writ ref'd n.r.e.); *see Garza v. Fleming*, 323 S.W.2d 152, 156–57 (Tex.

Civ.App.—San Antonio 1959, writ ref'd n.r. e.).

■ Although the paragraph in the underlying judgment limiting enforcement of the liability assessed against Frances's estate to community property assets in the estate suggests an *in rem* judgment, it also imposes joint and several liability upon both the estate of Frances and the estate of Claude. We determine that the judgment is ambiguous regarding the issues with which we are concerned. As previously noted, State Farm's liability under the homeowners' policy is conditioned upon a determination that the insured (Frances) was personally liable for the damages that she (or her estate) became legally obligated to pay. Because the judgment provides little or no guidance on the question of personal liability, we conclude that the judgment is ambiguous in this respect. In other words, we determine that the judgment can reasonably be read as imposing liability on Frances's estate either as the result of Frances's personal liability or as the result of Frances's possession of community property subject to the tortious liability of her spouse. We will therefore consider the entire record associated with the underlying lawsuit, including the facts and the applicable law of the case, in our effort to ascertain the meaning of the judgment rendered in that lawsuit.

State Farm contends that the judgment against Frances's estate was based on section 5.61 of the Family Code. In pertinent part, that statutory provision states:

§ 5.61. **Rules of Marital Property Liability**

. . . .

(d) All the community property is subject to tortious liability of either spouse incurred during marriage.

TEX.FAM.CODE ANN. § 5.61(d) (Vernon 1975). State Farm's contention is certainly consistent with the paragraph of the judgment which states that the judgment against the Frances Fulton estate may be enforced only against community property. And, as previously noted, there were no allegations or evidence that any acts or omissions of Frances Fulton contributed in any way to the shootings. There were no allegations or evidence that Frances was vicariously liable, nor were there allegations or evidence of agency or any form of joint enterprise. The plaintiffs merely pleaded and proved that Frances was married to Claude when the shootings occurred.

Since the plaintiffs in the underlying lawsuit never pleaded or proved that the shootings were due to any acts or omissions of Frances, Frances could only be personally liable because of her husband Claude's conduct. The Texas Family Code provision governing the imposition of such liability states as follows:

§ 4.031. **Spousal Liability**

(a) A person is *personally liable* for the acts of the person's spouse *only if:*

(1) the spouse acts as an agent for the person; or

(2) the spouse incurs a debt for necessaries under Section 4.02 of this code.

(b) Except as provided by Section 5.61 of this code, community property is not subject to a liability that arises from an act of a spouse.

(c) A spouse does not act as an agent for the other spouse solely because of the marriage relationship.

TEX.FAM.CODE ANN. § 4.031 (Vernon Supp. 1990) (emphasis added). Section 4.031 appears to be, at least in part, a legislative codification of Texas decisional law. In 1964, the Texas Supreme Court stated that a husband is not individually liable for the torts of his wife if those torts were not aided and abetted by the husband. *See Turner v. Turner,* 385 S.W.2d 230, 232 (Tex.1964). Section 4.031 is certainly consistent with this statement. Subsection (c) of section 4.031 is clearly based on the supreme court's holding that the marital relationship does not in itself make one spouse the agent of the other. *See Wilkinson v. Stevison,* 514 S.W.2d 895, 898 (Tex. 1974). Subsection (a)(1) is a corollary to the supreme court's ruling that actions resulting merely from the status of husband and wife do not impose upon the spouses the liabilities or imputed negligence incident to the relationship of principal and

agent. *See id.* In the *Wilkinson* case, the supreme court affirmed a judgment of imputed contributory negligence on the part of the wife because of a finding that an agency and joint enterprise relationship existed between the wife and her husband. *Id.* at 896, 898.

We determine that section 4.031 and the case law upon which it is based lead to the conclusion that the sums assessed against Frances's estate were not imposed as the result of personal liability. Those sums were assessed against the community property assets of the estate, as authorized by section 5.61(d) of the Family Code. Section 5.61(d) does not purport to make one spouse personally liable for the torts of the other spouse in the absence of facts calling for the application of the rules of agency or joint enterprise. *de Anda v. Blake*, 562 S.W.2d 497, 501 (Tex.Civ.App.—San Antonio 1978, no writ).

Williams and Wallace rely on a case which indicates that a spouse is individually or personally liable for the torts of the other spouse to the extent of his or her interest in the community property. *See Lawrence v. Hardy*, 583 S.W.2d 795, 799 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). We are of the opinion that this was not a correct statement of the law at the time, in view of the Texas Supreme Court's prior holding that a husband was not individually liable for torts committed by his wife which were not aided and abetted by the husband. *See Turner*, 385 S.W.2d at 232. A correct statement of the then existing law in Texas is found in the same court's opinion in *de Anda. See* 562 S.W.2d at 501. In any event, the rule stated in *Lawrence* is not the current law in Texas. The governing rule is now found in section 4.031 of the Family Code, which provides that a person is personally liable for the acts of the other spouse only if the spouse acts as an agent for the person or if the spouse incurs a debt for necessaries. *See* Tex.Fam.Code Ann. § 4.031(a).

Williams and Wallace also rely upon a 1968 case which is similar to this case. *See Firemen's Ins. Co. v. Burch*, 426 S.W.2d 306 (Tex.Civ.App.—Austin), *aff'd in part*

*and rev'd in part*, 442 S.W.2d 331 (Tex. 1968). In *Burch*, the insured's wife, Sarah Buttler, was involved in a collision, and a passenger in the other car, Dorothy Burch, was seriously injured. At the time of the collision, Sarah was separated from her husband, Larry Buttler, who was the insured under the policy at issue, and a suit for divorce was pending. Sarah was driving her father's pickup. 426 S.W.2d at 306–07. The court determined that Larry was legally obligated to pay damages caused by the tort of his wife, even though he had in no way participated therein, and therefore found that the insurer was liable under the policy, which contained language similar to the language in the policy in this case. In reaching this decision, the court relied on the common law rule that a husband was liable for the torts of his wife. *Id.* at 307–09. On appeal, the supreme court reversed on the issues of Larry's liability for his wife's tort and the insurer's corresponding liability under the policy. Because Sarah's liability had not yet been established, the supreme court said that disposition as to Larry's and the insurer's liability constituted an improper advisory opinion. *See* 442 S.W.2d at 332–35.

The supreme court's opinion in *Burch* establishes that the portion of the Austin court's opinion relied upon by Williams and Wallace was unnecessary for adjudication of the questions properly before the court. In other words, it was dictum. Moreover, the Austin court's opinion was founded on the old common law rule that made a husband liable for the torts of his wife. That rule has been abolished in Texas insofar as it made the husband personally liable in the absence of an agency relationship or a joint enterprise. *See Turner*, 385 S.W.2d at 232; *de Anda*, 562 S.W.2d at 501; Tex.Fam.Code Ann. § 4.031. For these reasons, *Burch* is not authoritative on the issues before us, and we will not follow it.

Yet another case relied upon by Williams and Wallace is clearly distinguishable from this case. *See Walker v. Lumbermens Mut. Casualty Co.*, 491 S.W.2d 696 (Tex. Civ.App.—Eastland 1973, no writ). In that case, the insured, Bill Walker, was insured under a homeowner's policy containing lan-

guage that was virtually identical to the language of the policy involved in this case. Walker's eleven year old son committed certain malicious, willful, and intentional acts resulting in damage to the property of Harry Dugan. Dugan sued Walker under former article 5923-1, which imposed civil liability on the parents of a child who maliciously and willfully damaged or destroyed property, and obtained a judgment against Walker. The court held that the insurance policy provided coverage for the judgment rendered against Walker. *Id.* at 697–99. *Walker* was different from this case because the legislature, by statute, had created a cause of action imposing vicarious personal civil liability on parents for certain acts committed by their children. Unlike section 5.61(d) of the Family Code, the statute involved in *Walker* created a cause of action and imposed personal liability on parents, not on community property. It also presupposed the existence of parental control over children. *See* TEX.REV.CIV. STAT.ANN. art. 5923-1 (Vernon 1962) (repealed 1973) (current version at TEX.FAM. CODE ANN. §§ 33.01–33.03 (Vernon 1986)). In the present case, there is no applicable cause of action, either common law or statutory, that would have imposed personal liability upon Frances for the acts of her husband.

Based on the foregoing, we conclude that the judgment rendered in the underlying lawsuit was an *in rem* judgment that imposed liability on the community property in Frances's estate pursuant to section 5.61(d) of the Family Code. It did not purport to impose personal liability on Frances or her estate; therefore, the judgment against Frances's estate was not an *in personam* judgment. The facts and circumstances contained in the record relating to the underlying lawsuit, as well as the applicable law, lead to the conclusion that an *in rem* judgment was the judgment that should have been, and was, rendered. Our construction of the judgment is both reasonable and proper because it achieves the required result of harmonizing the judgment with the facts and law of the case.

Referring again to the homeowners' policy, since the judgment in the underlying lawsuit did not impose personal liability on Frances or her estate, the homeowners' policy issued by State Farm did not provide coverage for the sums assessed against the estate of Frances Fulton. Points of error one and two are sustained.[1]

In its fourth point of error, State Farm maintains that the trial court erred in denying State Farm's motion for summary judgment. A movant is entitled to summary judgment if the summary judgment record shows that there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). When both parties move for sum-

---

1. In point of error three, State Farm contends that the trial court erred in granting the partial summary judgment if we conclude that the summary judgment was based on the doctrines of estoppel and waiver. Although Williams and Wallace included waiver and estoppel as a basis for the summary judgment sought, we determine that the partial summary judgment rendered by the trial court was not based on waiver or estoppel. The summary judgment recited:

   [T]he Court ... is of the opinion that the motions filed by Plaintiffs should be sustained *in part.* The Court finds as a matter of law, Steve Mallow, Independent Executor of the Estate of Frances Mallow Fulton, Deceased, *was one of the insureds under the terms* of State Farm Lloyds, Inc.'s policy number 43–43-9116-5, and that State Farm Lloyds, Inc. *has liability to the extent of its policy limits* of Three Hundred Thousand and No/100 Dollars ($300,000.00) per occurrence for the judg-

   ment rendered in Cause No. 87–430 ... and *within the meaning of the terms of the policy* there were two occurrences.... Other matters raised and contained in Plaintiffs' Motion for Summary Judgment *are denied* inasmuch as fact issues are there involved.

   (Emphasis added.) This summary judgment was based on the issue of coverage under the provisions of the policy. The summary judgment contains numerous references to the terms of the policy and finds that State Farm is liable under the policy. Also, the judgment makes no mention of waiver or estoppel and, significantly, states that other matters raised in Williams's and Wallace's motion for summary judgment are denied. Therefore, we need not address State Farm's third point of error.

   Because of our disposition of State Farm's points of error one and two, we also need not address its point of error five.

mary judgment, each party must carry his own burden, and neither party can prevail because of the other party's failure to discharge his burden. *See Villarreal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 605 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). When both parties move for summary judgment and one motion is granted and the other denied, the appellate court may reverse the trial court's judgment and render judgment for the other movant. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). However, if a material fact issue exists, rendition is not authorized, and a remand is required. *See Hardison v. Beard,* 430 S.W.2d 53, 57 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.).

█ As to the merits of State Farm's position that it was not liable under the terms of the homeowners' policy, our previous discussion demonstrates that State Farm was indeed entitled as a matter of law to summary judgment in its favor on this basis. However, State Farm must also overcome Williams's and Wallace's allegations of waiver and estoppel. Both parties' motions for summary judgment addressed the issues concerning waiver and estoppel. Williams and Wallace alleged that, during the underlying litigation, State Farm furnished a defense to Steve Mallow, executor of Frances's estate, without any qualification, non-waiver agreement, or reservation of its rights. Williams and Wallace further alleged that State Farm thereby waived any right to rely upon policy exclusions and was estopped to deny coverage.

█ We recognize that the doctrines of waiver and estoppel cannot be used to create insurance coverage where none exists under the terms of the policy. *Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 602–03 (Tex.1988) (op. on reh'g); *see Republic Ins. Co. v. Silverton Elevators, Inc.,* 493 S.W.2d 748, 751 (Tex.1973); *Minnesota Mut. Life Ins. Co. v. Morse,* 487 S.W.2d 317, 320 (Tex.1972); Annotation, *Doctrine of Estoppel or Waiver as Available to Bring Within Coverage of Insurance Policy Risks Not Covered by Its Terms or Expressly Excluded Therefrom,* 1 A.L.R.3d 1139, 1144–50 (1965) (herein-

after 1 A.L.R.3d 1139); 3 R. Long & M. Rhodes, The Law of Liability Insurance § 17.16, at 17–59, 17–65 (1988) (hereinafter Long & Rhodes). However, there is authority supporting an exception to this rule. That is, if an insurer assumes an insured's defense without declaring a reservation of rights or obtaining a non-waiver agreement, and with knowledge of facts indicating noncoverage, all policy defenses, *including those of noncoverage,* are waived, or the insurer may be estopped from raising them. *Farmers Texas County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522 (Tex.Civ.App.—Austin 1980, writ ref'd n.r. e.); *Pacific Indem. Co. v. Acel Delivery Service, Inc.,* 485 F.2d 1169, 1173 (5th Cir. 1973) (applying Texas law), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); *see* Annotation, *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Insured as Waiver or Estoppel as Regards Defense of Noncoverage or Other Defense Existing at Time of Accident,* 38 A.L.R.2d 1148, 1150–55 (1954) (hereinafter 38 A.L.R.2d 1148); 7C J. Appleman & W. Berdal, Insurance Law and Practice § 4692, at 289–95 (1979) (hereinafter Appleman & Berdal); A. Windt, Insurance Claims and Disputes § 2.06, at 32–33 (1988) (hereinafter Windt); Long & Rhodes § 17.16, at 17–67.

█ Stated another way, the defense by an insurer of an action against the insured is incompatible with a denial of liability under the policy unless the insurer has taken appropriate steps to reserve the question of its liability. *Western Casualty & Sur. Co. v. Newell Mfg. Co.,* 566 S.W.2d 74, 76 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *see Ferris v. Southern Underwriters,* 109 S.W.2d 223, 226 (Tex. Civ.App.—Austin 1937, writ ref'd); *American Indem. Co. v. Fellbaum,* 225 S.W. 873, 874 (Tex.Civ.App.—San Antonio 1920), *aff'd,* 114 Tex. 127, 263 S.W. 908 (1924). In affirming the judgment in the *Fellbaum* case, the Texas Supreme Court stated:

It is true that the [policy] provision [concerning the insurer's duty to defend and the insured's duty to cooperate] does not

say that if the indemnity company fails in its defense, and judgment is rendered against the assured, it will pay the judgment; but we believe that this was the purpose and intention of the parties when the contract was made.

. . . [The insurer] had a right to make the defense, control the proceedings, examine and cross-examine the witnesses, and though not technically a party, it was so connected with the litigation by its interest in the result and by its active participation that it is bound by the judgment.

*Fellbaum*, 114 Tex. at 131–32, 263 S.W. at 910.

■■■ At least one of the reasons for the rule appears to be the existence of a conflict of interests, either actual or potential, between the insured and the insurer in connection with the conduct of the defense of the insured. *See* WINDT § 2.09, at 40–41. For example, a conflict of interests might arise when the insurer represents the insured in a lawsuit and simultaneously formulates its defense of noncoverage against the insured. *Wilkinson*, 601 S.W.2d at 522; *Pacific Indem.*, 485 F.2d at 1173; *see Employers Casualty Co. v. Tilley*, 496 S.W.2d 552, 560–61 (Tex.1973). A number of cases indicate or suggest that the rule is also justified by the fact that the insured is deprived of the right to completely control his defense; some of these cases further suggest that this situation is inherently prejudicial to the insured in the absence of a reservation of rights. *See American Indem. Co. v. Fellbaum*, 114 Tex. 127, 131–32, 263 S.W. 908, 909–10 (1924); *United Servs. Auto. Ass'n v. Zeller*, 135 S.W.2d 161, 164 (Tex.Civ.App.—San Antonio 1939, writ dism'd judgm't cor.); *Ferris*, 109 S.W.2d at 226; *Dallas Coffee & Tea Co. v. Williams*, 45 S.W.2d 724, 728 (Tex.Civ.App.—Dallas 1931, writ dism'd); *Automobile Underwriters' Ins. Co. v. Murrah*, 40 S.W.2d 233, 234–35 (Tex. Civ.App.—Dallas 1931, writ ref'd); *Fellbaum*, 225 S.W. at 874; 38 A.L.R.2d 1148, 1150–51, 1160–61; APPLEMAN & BERDAL § 4693, at 331; WINDT § 2.08, at 40–41.

The distinction between cases in which the general rule is applied and cases in which the exception is applied appears to be the fact of assumption of the insured's defense without a reservation of rights concerning coverage. *Compare* 1 A.L.R.3d 1139 (application of general rule) *with* 38 A.L.R.2d 1148 (application of exception). We have found no case, nor has either party cited a case, in which the general rule was applied where there was an assumption of the insured's defense by an insurer. All of the cases that we have found applying the general rule involved entirely different situations. *See, e.g., Morse*, 487 S.W.2d at 320 (acceptance of premiums, not assumption of defense); *Washington Nat'l Ins. Co. v. Craddock*, 130 Tex. 251, 253–54, 109 S.W.2d 165, 166 (Tex.Comm'n App. 1937, opinion adopted) (payment of some policy benefits, not assumption of defense); *Reeves v. New York Life Ins. Co.*, 421 S.W.2d 686, 687–88 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.) (erroneous payment to insured and misrepresentations by soliciting agent, not assumption of defense).

This Court's opinion in *Automobile Underwriters' Ins. Co. v. Murrah*, 40 S.W.2d 233 (Tex.Civ.App.—Dallas 1931, writ ref'd), is consistent with the application of the exception to cases in which the insurer undertakes to defend the insured without reserving its rights concerning coverage. In *Murrah*, the owner of a fleet of trucks had obtained liability insurance covering accidental injuries to others caused by the operation of his trucks. Under the terms of the policy, if the driver of one of the trucks was intoxicated or was operating the truck in violation of law, there was no coverage. *See Murrah*, 40 S.W.2d at 233–34. When the fleet owner was sued by a person who was injured in a collision with one of the owner's trucks, the insurer assumed the owner's defense and continued that defense *after* an amended petition alleged that the driver of the truck was intoxicated and driving the truck at a rate of speed in excess of that allowed by law. The case went to trial five months after the filing of this amended petition, and the jury returned a verdict against the fleet owner and found that the truck driver was intoxi-

cated and speeding at the time of the collision. The insurance company filed two motions for a new trial and never attempted to reserve its rights under the policy until nearly two months after the jury's verdict. The insurer then denied liability under the policy. The case was not appealed, and the judgment became final. *Id.* at 234–35. On appeal from a collateral lawsuit concerning the issue of the insurer's liability under the policy, this Court concluded that the insurer had waived the defensive policy clauses that it attempted to rely on. Therefore, the Court held that the insurer was unconditionally indebted to the fleet owner in the amount of the policy limit of $5,000. *Id.* at 235. The facts of the case were indicative of a conflict of interests between the insurer and the insured. If the driver of the truck was found to have been violating the law or to have been intoxicated, the insurer was not liable under the policy. If the contrary was established, the insured was entitled to indemnity if the driver was nevertheless negligent. Under these circumstances, the insurer's exclusive control of the litigation was considered harmful to the interests of the insured. Thus, despite the fact that the policy clearly did not provide for coverage under the circumstances, the insurer was held liable because of its conduct.

This case is not unlike the *Murrah* case. State Farm's homeowners' policy provided for liability on the part of the insurer under Coverage D only in cases of personal liability on the part of the insured. It was in State Farm's interest to avoid only a judgment that was based on Frances's *personal* liability, whereas the interest of the executor of Frances's estate was served only by a judgment that imposed no liability, or, short of that, at least one that imposed personal liability on Frances so that insurance would be available to cover the loss. There was an apparent conflict of interests between the insurer and the insured. State Farm defended the estate of Frances throughout trial, and an adverse judgment was rendered against the estate. The appeal from the judgment below is before us

because the parties differ as to whether the underlying judgment was, or legally could have been, based on personal liability. Indeed, we have determined that the underlying judgment was ambiguous with respect to the issue of personal liability. Yet State Farm elected not to appeal that judgment and refused to pay any part it. Prior to that time, State Farm never attempted to reserve its rights under the policy with respect to Frances's estate. We conclude that the exception as stated in *Wilkinson* and *Pacific Indemnity* may be applicable in this case. Therefore, we now address some of the issues that are involved.

First, the application of the *Wilkinson* and *Pacific Indemnity* exception requires a showing that the insurer was aware of facts or circumstances indicating noncoverage. *Wilkinson*, 601 S.W.2d at 521–22; *Pacific Indem.*, 485 F.2d at 1173, 1174–75; *see* APPLEMAN & BERDAL § 4693, at 310. Second, we note that the courts often use the terms estoppel and waiver interchangeably. However, the doctrines of estoppel and waiver are two distinct doctrines. Waiver requires the voluntary surrender of a known right. *See Utilities Ins. Co. v. Montgomery*, 134 Tex. 640, 644, 138 S.W.2d 1062, 1064 (Tex. Comm'n App.1940, opinion adopted). Estoppel requires a showing that the insured was prejudiced by the conduct of the insurer. *See Employers Casualty Co. v. Tilley*, 496 S.W.2d at 560. As referenced above, one of the reasons for the rule stated in *Wilkinson* and *Pacific Indemnity* is the existence of a conflict of interests between the insured and the insurer. Another related reason is the harm potentially or inherently suffered by an insured who lacks the right to completely control his defense. Regardless of whether the courts have discussed the issue in terms of waiver or estoppel or both, they have generally required a showing that the insured was harmed by the insurer's conduct of assuming the insured's defense without a reservation of rights or non-waiver agreement. *See Pacific Indem.*, 485 F.2d at 1175–76; 38 A.L.R.2d 1148, 1150–51, 1157–61.[2] A

**2.** Since knowledge on the part of the insurer of

facts indicating noncoverage as well as harm to

number of jurisdictions effectively hold that when an insurer assumes exclusive control of an insured's defense without reserving its rights and with knowledge of noncoverage, prejudice is conclusively presumed. *See* 38 A.L.R.2d 1148, 1150–51, 1160–61. Apparently, the mere existence of a conflict of interests may be enough to demonstrate harm. *See, e.g., Murrah,* 40 S.W.2d at 234–35. However, unless a conflict of interests or other harm is clear and unmistakable, we are inclined to the view that the insured must show how he was harmed. Because the *Wilkinson* and *Pacific Indemnity* exception is potentially applicable to this case, we overrule State Farm's fourth point of error complaining of the trial court's denial of State Farm's motion for summary judgment.

In view of the relatively ambiguous nature of the petition, the applicable law, and the resulting judgment in the underlying lawsuit, a conclusive presumption of harm to Frances's estate is unwarranted. The ambiguity referred to may also impact the issue of State Farm's knowledge of facts indicating noncoverage. The record before us contains scant information regarding the conduct and quality of State Farm's defense of the estate of Frances. Material issues of fact exist regarding State Farm's knowledge of noncoverage and any harm or prejudice suffered by Frances's estate. Therefore, we remand this case for further proceedings. In doing so, we express no opinion as to the ultimate resolution of the issues of State Farm's knowledge and harm to the estate of Frances. We emphasize that our decision is not intended to discourage insurers from undertaking the defense of their insureds. However, in the face of any doubts concerning coverage, application of the *Wilkinson* and *Pacific Indemnity* rule can be simply and easily avoided if the insurer reserves its rights as to coverage under the policy. Failing that, the insurer faces further trial on issues such as are faced in this case.

the insured are required, the exception as applied appears to involve principles of both waiver and estoppel.

We reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion. *See* TEX.R.APP.P. 81(c).