**JACQUELINE ANDERSON, Plaintiff**

**v.**

**NATIONAL CHIROPRACTIC MUTUAL INSURANCE COMPANY,**
**Defendant**

Civ. No. 1070/1992

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

October 8, 1997

47

Diane Trace Warlick, Esq., (Warlick and Quigley, P.C.), St. Croix, U.S.V.I., *for Plaintiff*

Henry C. Smock, Esq., (Hymes, Zebedee & Smock), St. Thomas, U.S.V.I., *for Defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

In this action for a declaratory judgment, the Court is asked to determine whether defendant National Mutual Chiropractic Insurance Company ("NCMIC" or "Insurer") is liable under a professional liability insurance policy ("the policy") which it issued to Douglas W. Menzies, D.C. ("Dr. Menzies" or "Insured"). Before the Court are cross-motions for summary judgment.[1] The issue is whether NCMIC, as a result of a settlement agreement entered into between Dr. Menzies and Jacqueline Anderson, is liable under the policy for damages arising from Dr. Menzies' alleged breach of contract during the course of treatment for plaintiff's minor back injury. For the reasons which follow, summary judgment will be granted to the plaintiff, and the Court will issue a declaratory judgment ordering NCMIC to indemnify its insured by satisfying

---

[1] The parties have also filed several additional briefs. In addition to her opposition to defendant's motion, plaintiff filed a reply to defendant's opposition to her motion and a supplemental memorandum in opposition to defendant's motion and in support of plaintiff's motion. Defendant filed an opposition to plaintiff's motion for summary judgment.

the settlement agreement entered into between the plaintiff and Dr. Menzies.

## I. Summary Judgment

 Summary judgment is provided for in RULE 56 of the FEDERAL RULES OF CIVIL PROCEDURE. Section (c) of RULE 56 states that a Court shall enter summary judgment where the record reveals no genuine issue of material fact and the sworn evidence entitles the movant to judgment as a matter of law. The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Once this showing has been made, the burden shifts to the non-moving party to present affirmative evidence from which a jury might reasonably return a verdict in his or her favor. *Id.; Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). In opposing a summary judgment motion, a party may not rest on his or her pleadings, bare assertions, or conclusory allegations, but must set forth specific facts by affidavit or other sworn evidence showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 247 (internal quotations and citations omitted). On cross-motions for summary judgment, the same standards apply. *Peters Tp. School Dist. v. Hartford Accident & Indemnity Co.,* 833 F.2d 32, 34 (3d Cir. 1987).

## II. Factual Background

This action stems from an underlying medical malpractice suit brought by Jacqueline Anderson against defendant's insured, Dr. Menzies. In *Anderson v. Menzies,* Civil No. 328/1988, plaintiff, Jacqueline Anderson, filed a complaint against Dr. Menzies alleging two counts of negligence and one count of willful breach of contract. NCMIC assumed the defense of Dr. Menzies and hired an attorney to defend his interests. There is little or no dispute as to the facts in this case; at issue is the application of relevant law to the facts.[2]

---

[2] One matter which is in dispute is the actual coverage of the insurance contract. This has been held, however, to be a matter of law, rather than a matter of fact where the wording is, as here, clear and unambiguous. *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3d Cir. 1985). However, because the Court finds that coverage exists under the policy due to the doctrine of estoppel, the issue of actual coverage is not reached.

By letter dated October 18, 1988, NCMIC informed Dr. Menzies that it disclaimed liability for any amounts over the $100,000.00 policy limit. NCMIC further advised Dr. Menzies that he was at liberty to retain separate counsel to defend against any excess judgment. No other disclaimers were made, nor were any rights reserved at that time.

In March 1991, the District Court granted summary judgment in Dr. Menzies' favor on the negligence counts only, leaving a single count of breach of contract. Subsequent to the court's denial of summary judgment on the breach of contract claim, NCMIC informed its insured by letter dated March 15, 1991, that his insurance was limited to "claims for damages brought against [him] as a result of treatment to a patient, and did not include claims of any willful acts or omissions, or breach of contract, libel, slander, defamation, invasion of privacy, etc...." The letter further stated that as of ten days from the date of the letter, NCMIC would no longer provide coverage or legal services to Dr. Menzies. Several weeks later, however, NCMIC retracted its refusal to defend and indicated that it would continue to provide a "courtesy defense" but maintained that any judgment for damages recovered against Dr. Menzies would not be covered by the company.[3]

After several pre-trial conferences with the Magistrate Judge assigned to the case, Dr. Menzies, on the advice of counsel provided by NCMIC, agreed to settle the remaining breach of contract claim for ninety-nine thousand dollars ($99,000.00). The settlement agreement entitled "Covenant Not to Execute Judgment and Related Covenants," ("Covenant" or "Agreement") stated that "[d]efendant is hereby given peace upon any and all claims ... in the complaint" and that "[d]efendant herein ... does not ... admit any liability on account of any of said claims, but expressly denies all of such liability."[4] The Covenant also included a provision whereby Ms. Anderson was assigned all rights of Dr. Menzies for indemnification. Specifically, the Agreement stated that "Plaintiff expressly reserves the right to proceed against, and cause execu-

---

[3] Plaintiff's Motion for Summary Judgment Exhibit #5.

[4] Plaintiff's Motion for Summary Judgment Exhibit #6 at 2.

tion to issue against [NCMIC]..." and that "nothing contained herein shall prevent Plaintiff from proceeding against [NCMIC] for payment of sums due under the settlement agreement herein, and any judgment issued hereon."[5]

This declaratory action resulted from NCMIC's mid-litigation disclaimer of coverage and subsequent refusal to pay the amount for which the claim was settled. Plaintiff moves for summary judgment contending that because defendant furnished a defense to insured without executing a non-waiver agreement or issuing a reservation of rights letter, defendant is estopped from asserting lack of coverage. NCMIC cross-moves for summary judgment arguing that estoppel is not proper in this case because application of that doctrine requires detrimental reliance on the part of the party seeking estoppel and no prejudice has been proven by its insured. Additionally, defendant alleges that the settled claim for willful breach of contract is clearly not covered by insured's malpractice insurance policy and that there was no need to disclaim coverage at the outset of the suit. Finally, defendant maintains that neither liability nor damages have been established on the part of its insured in the underlying tort action, and, therefore, claims that it is not responsible for payment under the policy because the insured specifically denied liability under the settlement agreement.

## III. Analysis

### A. Estoppel

In support of her summary judgment motion, plaintiff claims that NCMIC should be estopped from disclaiming liability under the policy because it provided a defense for its insured without timely reserving the right to disclaim coverage. Thus, the threshold question in this case is whether NCMIC waived its defense to coverage under the policy. For even if NCMIC's policy unambiguously precluded coverage for the breach of contract claim, NCMIC will still be liable for indemnification if it failed to timely

---

[5] *Id.*

notify its insured that it was reserving its right to rely on the coverage limitation under the policy.[6]

■ Although an issue of first impression in the Virgin Islands, this case is controlled by a long established rule that

[A] liability insurer which assumes and conducts the defense of an action brought against the insured with knowledge of facts taking the accident or injury outside the coverage of the policy, and without disclaiming liability or giving notice of a reservation of its right to deny coverage, is thereafter precluded in an action upon the policy from setting up the defense of noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.

*Alliance Ins. Co. v. Colella*, 995 F.2d 944 (9th Cir. 1993); *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542 (Tex.App. 1990); *Shelby Steel Fabricators v. U.S.F. & G.*, 569 So2d 309 (Ala. 1990); *Ins. Co. of the West v. Haralambos Bev.*, 241 Cal.Rptr. 427 (Cal.App.2d Dist. 1987); *Beckwith Machinery Co. v. Travelers Indem. Co.*, 638 F.Supp. 1179 (W.D.Pa. 1986); *Aetna Life and Casualty Co. v. McCabe*, 556 F.Supp. 342 (E.D.Pa. 1983); *Koehring Co. v. Am. Mut. Liab. Ins. Co.*, 564 F.Supp. 303 (E.D.Wis. 1983); *Pendelton v. Pan American Fire and Casualty Co.*, 317 F.2d 96 (10th Cir. 1963); *see also* Annotation, *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Insured as Waiver or Estoppel as Regards Defense of Noncoverage or Other Defense Existing at Time of Accident*, 38 A.L.R.2d 1148, 1150-1155 (1954); Couch on Insurance 2d (rev. ed) § 51:82.[7]

---

[6] As previously noted, the Court does not reach the question of actual coverage of the breach of contract claim under the policy because it finds that in accordance with the doctrine of estoppel, NCMIC must indemnify its insured.

[7] While case law of other jurisdictions are not controlling upon this Court, they are considered persuasive authority inasmuch as they have contributed to the development of general principles of insurance law. *See*, V.I. Code Ann. tit. 1, § 4; *Berne v. Aetna Insurance Co.*, 604 F. Supp. 958, 960 (D.C.V.I. 1985).

 This general rule is limited by the principle that the insurer will not be prevented from denying coverage where it provides timely notice to the insured that its assumes the defense of a claim under a reservation of rights. *Aetna Life and Casualty Co.*, 556 F.Supp. at 1354; *Shelby Steel Fabricators*, 569 So.2d at 311; *see also Federal Ins. Co. v. X-Rite, Inc.*, 748 F. Supp. 1223, 1226 (W.D. Mich. 1990) (*citing Meirthew v. Last*, 135 N.W.2d 353 (Mich. 1965)). If this is done, the insurer will not be precluded from its ability to later disclaim liability. *Draft Systems, Inc. v. Alspach*, 756 F.2d 293 (3d Cir. 1985) (applying Pennsylvania law). Timeliness is a two-step question. The Court looks first to the earliest moment that the insurer should have become aware of the substantial possibility of conflict between its own interests and those of the insured, and then measures the time elapsing between that time and the time of notification. *Cozzens v. Bazzani Bldg. Co.*, 456 F.Supp. 192 (1978). Moreover, the insurer must have had actual knowledge of the nature of the claim before it will be liable for failure to timely inform insured of its position regarding noncoverage. *Ins. Co. of the West*, 241 Cal.Rptr. at 433; *State Farm Lloyds, Inc.*, 791 S.W.2d at 552. *See also* COUCH ON INSURANCE 2D, § 51:88. The timeliness requirement for a reservation of rights has been imposed because

> [a]n insured is entitled to know early in the litigation process whether the insurer intends to honor [its] duty in order that the insured may take steps to defend himself. (Citations omitted). If in fact the insurer undertakes that defense the insured may reasonably rely upon the non-existence of policy defenses. To hold otherwise would allow the insurer to conduct the defense of the action without the knowledge of the insured that a conflict exists between itself and the insurer. The conflict is that the insurer retains a policy defense which would relieve the insurer of all liability while simultaneously depriving the insured of the right to conduct his own defense.

*Equity General Ins. Co. v. C & A Realty Co.*, 715 P.2d 768, 771 (Ariz. App. 1985) (*citing* 7C APPLEMAN, INSURANCE LAW & PRACTICE (BERDAL ED.) § 4694 at 352 (1979).

In the underlying malpractice action, the complaint filed by Ms. Anderson contained sufficient information to put NCMIC on

notice that a claim for breach of contract was being raised against Dr. Menzies, its insured. NCMIC was on notice as early as September of 1988, when the complaint was filed, of a potential defense to coverage. Nonetheless, NCMIC had undertaken and assumed complete control of Dr. Menzies' defense for more than 2½ years without reserving its rights to contest coverage on this claim. In fact, NCMIC did not assert any intention to disclaim coverage under the policy until 1991, after the clearly covered claims for negligence were dismissed.[8] On March 15, 1991, NCMIC sent Dr. Menzies a letter which stated that the insurance was limited to "claims for damages brought against [him] as a result of treatment to a patient, and did not include claims of any willful acts or omissions, or breach of contract, libel, slander, defamation, invasion of privacy, etc...." The letter also informed Dr. Menzies that NCMIC would no longer provide coverage or legal services to him.[9] Hence, resolution of the issue of estoppel turns on whether or not NCMIC's March 1991 reservation of rights letter was timely.

Plaintiff argues that there was no doubt about the existence of a coverage defense presently asserted by NCMIC, as from the outset of the underlying litigation, the breach of contract claim was clearly alleged in her complaint. NCMIC does not address this issue; however, as author of the policy, NCMIC must be held to an intimate awareness of the terms of the contract it employs. The gist of Ms. Anderson's breach of contract claim against Dr. Menzies was contained in paragraph 25 of the Complaint:

> At my initial examination and evaluation, Dr. Menzies advised me that following the course of treatment he recommended would cure the mild low back pain I had been experiencing. Dr. Menzies willful acts or omissions

---

[8] In fact, the record reveals that NCMIC's letter of October 18, 1988, only informed Dr. Menzies that it would not cover any amount over the $100,000 policy limit. In no way can this be construed as a denial of coverage for the breach of contract claim at issue here.

[9] Inasmuch as NCMIC, on April 8, 1991, retracted its refusal to defend and indicated that would continue to provide a "courtesy defense," NCMIC's duty to defend is not an issue in this case.

54

constituted a breach of contract for which I am entitled to damages ...[10]

Since the allegations of the breach of contract claim were perspicuously set out in the complaint, it should have been apparent to NCMIC from a first reading of the Complaint alone that said claim may have fallen outside of the "Covered Agreement."[11]

 When the complaint in the underlying action was filed in September 1988, NCMIC immediately undertook to defend its insured, and continued to do so until the district court granted its motion for summary judgment on the negligence counts and denied summary judgment as to the breach of contract claim. NCMIC never indicated to Dr. Menzies that it might have a valid defense as to coverage, although the nature of the claim was clear from the outset. Now, NCMIC argues that the alleged willful acts and omissions, included in paragraph 25 of the Complaint operate to preclude coverage. Thus, the fact that more than 29 months elapsed between the filing of the complaint and the giving of notice, and that the notification did not occur until after the denial of summary judgment, is critical and dictates the conclusion that timely notice was not provided.

2. Prejudice to the Insured

Finally, NCMIC argues that even if the Court finds its reservation of rights to be untimely, estoppel cannot lie in the absence of detrimental reliance or actual prejudice to the party seeking estoppel. Plaintiff, however, argues that under the prevailing law and the circumstances of this case, prejudice to the insured is manifestly evident and must be presumed as a matter of law.

---

[10] Plaintiff's Motion for Summary Judgment Exhibit #2 at 5.

[11] The "Coverage Agreement," upon which NCMIC seeks to disclaim coverage, states in pertinent part that: "[t]he company will pay on behalf of the insured all sums, to which this insurance applies, and within the applicable limits of its liability which the insured shall become legally obligated to pay as damages because of injury caused by accident arising out of the rendering of or failure to render to a patient during the policy period, professional services by the named insured as a chiropractor..." Plaintiff's Motion for Summary Judgment Exhibit #1 at 2.

■ There is widespread agreement in the case law that an untimely notice of disclaimer creates a presumption of prejudice.[12] *See Safeco Ins. Co. v. Ellinghouse*, 725 P.2d 217 (Mont. 1986) (prejudice is conclusively presumed where the insured loses its right to control and manage the case by virtue of the insurer's assumption of the defense); *Pendelton v. Pan American Fire and Casualty Co.*, 317 F.2d 96 (10th Cir. 1963); and COUCH ON INSURANCE 2D, § 51:85 (prejudice to the insured, by virtue of the insurer's assumption of the defense and subsequent denial of liability, conclusively presumed) (citations omitted). This approach is not exclusive, however, as other cases have required a showing of actual prejudice on behalf of the insured. *See Mendel, et al. v. The Home Insurance Co.*, 806 F.Supp. 1206 (W.D.Pa. 1992) (applying Pennsylvania law, the District Court refused to apply a strict waiver theory and determined that prejudice is a question of fact); *Hoyt v. St. Paul Fire & Marine Ins. Co.*, 607 F.2d 864 (9th Cir. 1979) (actual prejudice caused by insured's reliance on insurer's handling of defense gives rise to estoppel); and *Beckwith Machinery Co. v. Travelers Indem. Co.*, 638 F.Supp. 1179 (W.D.Pa. 1986) (insured suffered actual prejudice and, therefore, insurer estopped from disclaiming coverage after insured relied upon it for coverage for 13 months). However, the Court finds it unnecessary to decide this question because, as a matter of law, under either a presumptive or actual prejudice theory, NCMIC is estopped from denying coverage.

In presumptive prejudice jurisdictions, when an insurer assumes exclusive control of an insured's defense without reserving its rights and with knowledge of noncoverage, prejudice is presumed. *Multi-States Transport, Inc. v. Michigan Mutual Ins. Co.*, 398 N.W.2d 462 (Mich.App. 1986) and *Safeco Ins. Co. v. Ellinghouse*, 725 P.2d 217 (Mont. 1986). It is the mere existence of a conflict of interest, either actual or potential, between an insurer and the insured in connection with the conduct of the defense of the insured which raises the presumption of prejudice. Additionally, courts have found that the insured is inherently prejudiced if he is deprived of the right to completely control his defense. *State Farm Lloyds, Inc. v. Williams,*

---

[12] It should be noted that "prejudice" enters into the instant analysis only insofar as it bears on the unreasonableness of the insurer's delay following awareness of the operative facts.

791 S.W.2d 542, 551 (Tex.App.-Dallas 1990) (*citing American Indem. Co. v. Fellbaum*, 263 S.W. 908 (Tex. 1924).

Applying these principles to the case at bar, it is clear that were this Court to adopt the presumptive prejudice theory, NCMIC would be estopped to deny coverage for three reasons: (1) before issuing its reservation of rights letter, NCMIC had undertaken and conducted the defense of Dr. Menzies for 29 months, thereby depriving its insured of his right to retain private counsel; (2) if the breach of contract claim was not protected by the policy, Dr. Menzies had the right to arrange for the initial investigation, and fully participate in all pretrial proceedings from the time the complaint was filed; and (3) during the 29 months that NCMIC had exclusive control of the defense of the claims, a potential conflict of interest existed by virtue of the fact that a defense for NCMIC against Dr. Menzies on the issue of coverage could simultaneously have been prepared. Additionally, an apparent conflict of interest exists to the extent that it was in NCMIC's interest to avoid only a judgment based on the rendition of professional services, whereas the interest of Dr. Menzies was served only by a judgment that imposed no liability, or at least one that imposed liability for rendering professional services so that insurance would be available to cover the loss. Thus, as the court in *Transamerica Ins. Group* stated, "[t]he course cannot be rerun, no amount of evidence will prove what might have occurred if a different route had been taken. By its own actions, [NCMIC] irrevocably fixed the course of events concerning the law suit for the first [29] months." *Transamerica Ins. Group*, 554 P.2d at 1083. In view of the applicable law and under the circumstances of this case, prejudice must be presumed.

Assuming that presumptive prejudice does not apply, the result would be the same under the actual prejudice theory, which NCMIC advocates. NCMIC contends that Dr. Menzies suffered no actual prejudice because no discovery had been conducted on the breach of contract claim at the time the reservation of rights letter was issued.[13] The record in this case belies NCMIC's assertion and the case cited by NCMIC, *Mendel, et al. v. The Home Insurance Co.,*

---

[13] Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 9.

57

806 F. Supp. 1206 (W.D.Pa. 1992), in support of its position is not helpful. In *Mendel*, the court, applying an actual prejudice standard under Pennsylvania law, denied summary judgment because it determined that "at the time the insurer issued its reservation of rights letter, virtually all discovery remained to be completed because that process had been held in abeyance pending disposition of various motions and appeals ... and the trial did not begin until more than 14 months after the letter's issuance." *Mendel*, 806 F. Supp. at 1214. *Mendel* is inapposite to the case at bar because the discovery in *Anderson v. Menzies* was well under way at the time NCMIC pulled out of the case. In fact, on March 19, 1991, four days after NCMIC sent its reservation of rights letter, the District Court issued a scheduling order which stated, in pertinent part that (1) all written discovery was complete (except for expert witnesses); (2) the deadline for joining new·parties and for motions for amendments to pleadings was March 31, 1991; (3) all factual depositions shall be completed by may 30, 1991; (4) plaintiff's experts shall be named and copies of their opinions provided by August 31, 1991; (5) all experts' depositions shall be completed by October 15, 1991; (6) all motions, except motions in limine, to be filed by October 30, 1991; and (7) jury selection shall be November 18, 1991 with trial during that two-week term.[14] This limited time provided to Dr. Menzies to prepare for trial, which was scheduled to commence seven months after NCMIC first claimed noncoverage, clearly distinguishes *Mendel*.

A case squarely on point with the case sub judice is *Textile Machinery v. Continental Ins. Co.*, 409 N.E.2d 1 (Ill.App.1980). The Court in *Textile* stated that while "prejudice will not be conclusively presumed merely from the entry of appearance and assumption of the defense," the insurer was estopped from denying policy coverage where it did not do so until more than two and one-half years after it undertook the defense, on December 28, 1971, of a personal injury action filed against its insured. More than two and one-half years later, the insurer notified its insured that there was no policy coverage and tendered the defense back to its insured; however, the law firm retained by the insurer continued to

---

[14] Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 2 at 2.

represent the insured. The court determined that because the insurer had exclusively represented the insured, and the insured was induced to surrender his right to control his own defense for more than two and one-half years, the insured suffered sufficient prejudice to warrant a finding of estoppel. *Id.*

Here, NCMIC with full knowledge of all facts giving rise to possible rights of disclaimer, assumed and had virtual carte blanche over the defense of Dr. Menzies' case and did not send its reservation of rights letter until two and one-half years after the initiation of the underlying action and seven months before the trial was scheduled. Dr. Menzies was never represented in the suit by his own attorney, and the mere fact that he was offered to participate in the defense due to an excess coverage problem[15] does not militate against the conclusion that he relied on NCMIC for the defense. By virtue of NCMIC's exclusive control over Dr. Menzies' defense, the facts clearly show that Dr. Menzies' surrendered his right to control his own defense. NCMIC's abrupt denial of coverage on March 15, 1991, after Dr. Menzies had relied on it for coverage for more than two and one-half years, was too long to avoid application of actual prejudice, and is therefore sufficient to support a finding that NCMIC is estopped to deny policy coverage.

### B. *Insurer's Liability for Insured's Settlement*

Defendant's cross motion for summary judgment is based upon its assertion that the Covenant Not to Execute Judgment and Related Covenants, or settlement, is not binding on it due to the disclaimer of fault executed by its insured. Specifically, NCMIC claims that inasmuch as Dr. Menzies has denied causing plaintiff's injuries, no liability can be imputed to it unless and until such can be established by the plaintiff in an appropriate forum.

NCMIC's argument is without merit because an insured may settle rather than proceed to trial to determine its legal liability when an insurer declines coverage, as is the case here. *Luria Bros. & Co. v. Alliance Assur. Co. Ltd.*, 780 F.2d 1082, 1091 (2d Cir. 1986). Moreover, "an insured is not required to establish his actual

---

[15] *See* n.7 *infra.*

liability in order to recover the amount of the settlement from an insurance company so long as ... a potential liability on the facts known to the insured is shown to exist, culminating in a settlement in an amount reasonable in view of the size of the possible recovery and degree of probability of claimant's success against the insured." *Evanston Insurance Co. v. Treister*, 794 F.Supp. 560, 573 (D.C.V.I. 1992) *(citing Damanti v. A/S Inger*, 314 F.2d 395, 397 (2d Cir.) *cert denied*, 375 U.S. 834 (1963); *see also Luria Bros. & Co. v. Alliance Assur. Co. Ltd.*, 780 F.2d 1082, 1091 (2d Cir. 1986). As such, "when an insurer declines coverage and refuses to negotiate on the grounds that the matter is not covered by the policy, it does so at its own peril ... Such a rule is eminently prudent and practical, for without it, settlement would be difficult." *American Intern. Underwriters v. Zurn Industries*, 771 F. Supp. 690 (W.D.Pa. 1991).

In the case at bar, the record demonstrates that, on advice of independent counsel provided by NCMIC, Dr. Menzies settled with Ms. Anderson on the breach of contract claim. Additionally, at the time Dr. Menzies agreed to the settlement of Ms. Anderson's claim, he was aware of his potential for liability and the degree of probability of success by Ms. Anderson.[16] Plaintiff incurred significant financial hardship, which included medical expenses in excess of $70,000.00, exhaustion of all available paid leave, a period of nearly three months of unpaid leave, and approximately $4,500.00 in lost wages. In addition to the financial hardship incurred, deposition testimony indicates that Ms. Anderson suffered excruciating pain. Furthermore, while NCMIC offers no evidence to the contrary, the Court finds and the record amply supports a determination that the settlement in *Anderson v. Menzies* was reasonable.[17]

It is clear from the foregoing that there is no reason for the Court to refuse to hold NCMIC liable for the settlement to which Dr. Menzies agreed after NCMIC abandoned him. NCMIC has, at its

---

[16] Indeed, in the Covenant Not to Execute Judgment and Related Covenants which memorialized the settlement, Dr. Menzies himself acknowledged the substantial risk of recovery in excess of the policy limit of $100,000.00.

[17] It should be noted that in its cross-motion for summary judgment on this issue, NCMIC does nothing more than argue that "no cause of action against it has incurred because liability [by its insured] has been denied." Defendant's Cross-Motion for Summary Judgment at 3.

own peril, denied coverage without taking any steps to protect its interests and cannot now complain that there was no determination of actual liability. Accordingly, the Court finds that NCMIC is liable for the settlement amount.

## IV. Conclusion

The basic facts of this controversy are undisputed in the record. As such, upon viewing the evidence in the light most favorable to the nonmoving party, summary judgment is appropriate where, as here, an insurer undertakes to defend its insured without reservation of rights, continues to defend, for two and one-half years, although it possesses sufficient information concerning the possibility of no policy coverage, and subsequently gives notice of its intent to deny coverage, because it has waived its rights under the policy and is estopped from denying coverage. Furthermore, an insurer will be liable for a reasonable settlement negotiated by its insured when the insurer denies coverage and fails to participate in negotiations. Thus, the Court finds and declares that NCMIC is estopped from denying coverage under the policy in question and must indemnify Dr. Menzies for the amount of the settlement in *Jacqueline Anderson v. Douglas W. Menzies*, Civil No. 328/1988 (D.C.V.I.). Accordingly, plaintiff's motion for summary judgment will be granted and defendant's cross motion for summary judgment will be denied.[18] An appropriate order will enter.

---

[18] In reaching this conclusion, it should be noted that "the mere fact that cross-motions for summary judgment are filed cannot be taken to mean that no material facts are in dispute...." *Beckwith Machinery Co. v. Travelers Indem. Co.*, 638 F.Supp. 1179, 1189 (W.D. Pa. 1986) (*citing Riehl v. Travelers Insurance Co.*, 772 F.2d 1924 (3d Cir. 1985)).