**AMERICAN EAGLE INSURANCE COMPANY, Appellant,**

v.

**Charla NETTLETON, Individually as Sole Statutory Wrongful Death Beneficiary of John J. Collins, Deceased, and as Representative of the Estate of John J. Collins, Appellee.**

No. 08–94–00359–CV.

Court of Appeals of Texas, El Paso.

July 25, 1996.

Rehearing Overruled Sept. 11, 1996.

Fred J. Meier, Cynthia Hollingsworth, Gardere & Wynne, L.L.P., Dallas, for appellant.

L. Randall Lee, Richard, Lee, Rowley, Cobb & Hall, El Paso, for appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

### OPINION

BARAJAS, Chief Justice.

This is an appeal from a summary judgment in favor of Appellee. In an earlier suit, Appellee, as an assignee of Appellant's insureds, obtained a judgment against them. Appellee then sued Appellant to recover the judgment and statutory penalties. We reverse and remand.

## I. SUMMARY OF THE EVIDENCE

### A. The Crash

On January 28, 1990, Appellee's husband, John J. Collins, died in the crash of an airplane piloted by Philip C. Barrett and owned by West Texas Air Museum in El Paso, Texas. After taking off from West Texas Airport, Barrett passed the controls to Collins, a prospective buyer for the airplane and himself a pilot. After Collins commenced into a gentle left turn, the engine stopped. At this point, Barrett regained control of the plane and attempted to land it in a nearby gravel pit. However, there were obstructions near the pit and the plane crashed, killing Collins.

The National Transportation Safety Board ("NTSB") investigated the crash and did not provide a definite statement as to the cause of the crash. The following accounts are from the NTSB's brief on the accident:

#### —Narrative—

The engine lost power shortly after liftoff and the pilot made a forced landing in a gravel pit, intentionally stalling the airplane to obtain the lowest possible landing speed. The airplane had a STC for and was being operated on automotive gasoline. Residual fuel and debris were noted in the main fuel tank. The filter screen was estimated to be 20% blocked by san (sic) and debris. Some water was found in the fuel. The carburetor needle valve was found to be binding. It had a flat spot on one side, allowing fuel to flood the bowl. The #1 spark plug was inoperative. The #3 plug was oil soaked. All plugs and the exhaust pipe had carbon deposits. Two days before the accident, an airport worker started the engine and it ran for a short period of time before it stopped. No reason was given for the stoppage, and there was no evidence that it was investigated further. The airplane was not equipped with shoulder harnesses.

#### —Probable Cause—

The National Transportation Safety Board determines the Probable Cause(s) of this accident was:

Power loss due to failure of the carburetor assembly and the pilot's failure to correct known deficiencies. Factors were contaminated fuel, partially blocked fuel screen, fouled spark plugs, the rough terrain, and the lack of shoulder harnesses.

Appellee filed suit against Barrett, the Museum, and the Airport ("the Barrett defendants") in September 1990, asserting claims for wrongful death on her own behalf and Collins' survival claims on behalf of his estate. Appellee's suit alleged causes of action for negligence and gross negligence.

### B. The Insurance Policy

When the fatal crash occurred, the Barrett defendants were covered under Appellant's General Liability Airport Policy, which insured them against all sums up to $1,000,000 which the insured shall become legally obligated to pay as damages because of bodily injury or property damage and arising out of the sale of aviation fuel and oil. This policy specifically excluded liability for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any ... aircraft owned or operated by or rented or loaned to any insured, or (2) any other ... aircraft operated by any person in the course of his employment by any insured."

After reviewing the allegations contained in Appellee's petition, Appellant concluded that, based on the policy provisions, no cover-

age existed. Accordingly, Appellant denied coverage and opted not to defend the Barrett defendants in the suit. However, in July 1992, after receiving the NTSB reports, Appellee filed her second amended petition, alleging in the alternative that the Barrett defendants "negligently provided contaminated aviation fuel which was in the airplane at the time of the crash."

The amended petition included both covered and uncovered claims against the Barrett defendants. For this reason, Appellant offered to defend its insureds under a reservation of rights, asking them to acknowledge its request to reserve all policy rights and conditions. The Barrett defendants declined the reservation of rights, requesting an unconditional defense. Appellant then offered the Barrett defendants a supposed uncontrolled defense by paying the defense costs incurred by the counsel of their choice.[1] The Barrett defendants rejected Appellant's conditions for a defense and retained counsel to try the case for them.

### C. The Covenant Not to Execute and Assignment of Claims

Two weeks before trial, Appellee and the Barrett defendants executed an Assignment of Claims and Covenant Not to Execute ("the covenant"). The covenant provided that as a condition precedent to effectiveness of the agreement, a final judgment must be entered in favor of plaintiffs against one or more of the Barrett defendants at the non-jury trial of the case. The covenant further provided that "if a judge or jury determines, in this or

any other proceeding, that no insurance coverage existed ... Plaintiffs take nothing against the assets of the Barrett defendants not otherwise assigned herein...."[2]

### D. The Damages Case

· Appellee's suit against the Barrett defendants was tried in open court on February 24, 1994. The Barrett defendants called no witnesses and failed to offer any evidence regarding the cause of the crash other than fuel contamination.[3] The trial court rendered judgment for plaintiff, awarding actual damages in the amount of $612,800.80 after deduction of all statutory credits.[4] In its findings of fact and conclusions of law, the trial court determined that the storage, sale, handling, and distribution of the contaminated aviation fuel was 90 percent of the cause of the crash, Collins' death, and plaintiff's damages.

### E. The Instant Suit

Before the trial of the damages case commenced, Appellant represented to Appellee that it was willing to pay that percentage of any judgment attributable to covered claims. After the trial, Appellee demanded that Appellant pay the judgment, which Appellant refused to do.

On April 20, 1994, Appellee filed suit against Appellant, Aviation Office of America, Inc., and Aviation Adjustment Bureau, Inc., seeking to enforce the judgment in the prior damages suit. Appellee also filed claims for breach of contract, bad faith,

---

1. However, Appellant required the Barrett defendants to provide, among other things:

 (1) copies of all depositions, evaluations, and recommendations of their attorney,
 (2) proof of the insured's negligence and Appellee's alleged damage,
 (3) copies of all income tax records of the deceased and Appellee, and
 (4) copies of all lab tests concerning fuel contamination.

2. Appellant contends that the covenant, by protecting the Barrett defendants' personal assets from exposure, removed any incentive to defend the lawsuit. Thus, as a result of the covenant, Appellee and the Barrett defendants essentially agreed that the only source of any dollar damage recovery for Appellee was the potential insurance

coverage from Appellant for the fuel contamination claim.

3. The court seemed rather surprised about the Barrett defendants defensive strategies:

 The Court: All right. What kind of a case are you going to be putting on, Mr. McGregor?
 Mr. McGregor: We have no evidence, Your Honor.
 The Court: You're not going to put on anything?
 Mr. McGregor: No.
 The Court: You're resting?
 Mr. McGregor: Yes.

4. During the entire trial Appellant had its own attorney present, although he did not assist the Barrett defendants in any manner.

promissory estoppel, fraud, and breach of the duty of good faith and fair dealing. Appellee moved for summary judgment against Appellant only, which the trial court granted, severing the claim seeking to enforce the prior damages judgment from the remaining claims. The trial court awarded Appellee $861,894.07 in actual damages, $155,140.93 as statutory additional damages, and $35,656.44 as pre-judgment interest.

## II. DISCUSSION

Appellant attacks the judgment of the trial court in a single point of error, asserting that the trial court erred in granting summary judgment because Appellee failed to establish as a matter of law that Appellant is bound by the judgment rendered in the prior damages trial. We begin with the standards we employ to review a summary judgment.

The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Cortez v. Liberty Mut. Fire Ins. Co.*, 885 S.W.2d 466, 469 (Tex.App.—El Paso 1994, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors*, 450 S.W.2d 827, 828 (Tex.1970).

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *DeLuna v. Guynes Printing Co.*, 884 S.W.2d 206, 208 (Tex.App.—El Paso 1994, writ denied). Where the defendants are the movants and they submit summary judgment evidence disproving at least one essential element of each of plaintiff's causes of action,

then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Bradley v. Quality Serv. Tank Lines*, 659 S.W.2d 33, 34 (Tex. 1983); *Cortez*, 885 S.W.2d at 469.

Appellee's grounds for summary judgment provide as follows: Nettleton is entitled to summary judgment because:

(a) her judgment against American Eagle's insureds was obtained following an actual trial, and is now final;

(b) Nettleton has thus far satisfied her only obligation to receive payment under the policy;

(c) American Eagle waived any policy defenses it may have had by continuing investigation and settlement efforts on behalf of its insureds without obtaining their agreement that it could do so;

(d) American Eagle breached its policy obligations by refusing to unconditionally defend its insureds and by not notifying them about settlement offers it was making on their behalf; and

(e) American Eagle's breach of its policy obligations prevents it from collaterally attacking the judgment against its insureds.

Appellant asserts that because Appellee failed to establish any of these theories as a matter of law, the trial court's judgment should be reversed.

■ Appellant first attacks Appellee's fourth ground for summary judgment, contending that it did not breach its duty to defend the Barrett defendants by refusing to tender an unconditional defense. Appellant opines that because Appellee's second amended petition raised allegations of both covered and non-covered claims against the Barrett defendants, it was proper to tender its defense under a reservation of rights. We agree.

Texas courts follow the "complaint-allegation" rule in ascertaining the scope of a duty to defend. *American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App.—Dallas 1990, writ dism'd w.o.j.). This rule requires the trier of fact to examine only the allegations in the complaint and the insurance policy in determining whether a duty to defend exists. *Feed Store, Inc. v. Reliance Ins. Co.*, 774 S.W.2d 73, 74 (Tex.App.—

Houston [14th Dist.] 1989, writ denied); *Dorchester Development Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 382 (Tex.App.—Dallas 1987, no writ). Application of this rule gives rise to a duty to defend the suit if one or more of the plaintiff's claims, "if taken as true, [are] sufficient to state a cause of action ... coming within the terms of the policy." *Maryland Casualty Co. v. Moritz*, 138 S.W.2d 1095, 1097–98 (Tex.Civ.App.—Austin 1940, writ ref'd); *see Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir.1983).

Appellee's first two petitions in the damages case only contained allegations that the crash resulted from negligence and gross negligence. At this point in time, Appellant had no duty to defend the Barrett defendants because these allegations concerned non-covered conduct. However, in her second amended petition, in addition to the original allegations, Appellee raised allegations against the Barrett defendants regarding the sale of aviation fuel and oil. These newly added allegations were clearly covered by the policy. As such, the question becomes whether or not a duty to defend arises when an insured's petition alleges both covered and non-covered claims.

█ We recognize that waiver and estoppel have no operative force to change, rewrite, or enlarge the risks covered by an insurance policy. *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 550 (Tex.App.—Dallas 1990, writ denied); *Farmers Texas County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 521 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.); *see Minnesota Mut. Life Ins. Co. v. Morse*, 487 S.W.2d 317 (Tex.1972); *Washington Nat'l Ins. Co. v. Craddock*, 130 Tex. 251, 109 S.W.2d 165 (1937); *Great American Reserve Ins. Co. v. Mitchell*, 335 S.W.2d 707 (Tex.Civ.App.—San Antonio 1960, writ ref'd). However, there is authority supporting an exception to this rule. "If an insurer assumes the insured's defense without obtaining a reservation of rights or a non-waiver agreement and with knowledge of the facts indicating noncoverage, all policy defenses, *including those of noncoverage*, are waived, or the insurer may be estopped from raising them." *State Farm Lloyds, Inc.*, 791 S.W.2d at 550 (emphasis in original); *Wilkin-*

*son*, 601 S.W.2d at 521–22 (emphasis in original); *see Pacific Indemnity Co. v. Acel Delivery Serv., Inc.*, 485 F.2d 1169 (5th Cir. 1973), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); *Ferris v. Southern Underwriters*, 109 S.W.2d 223 (Tex.Civ. App.—Austin 1937, writ ref'd); *Automobile Underwriters' Ins. Co. v. Murrah*, 40 S.W.2d 233 (Tex.Civ.App.—Dallas 1931, writ ref'd); *see also* 7C JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4692, at 289 (Walter F. Berdal ed., 1979)("Generally, an insurer which undertakes the defense of an action against the insured with knowledge of a policy breach sufficient to avoid protection, without disclaiming liability or reserving its rights, is deemed to have waived such breach, or in any event is estopped to invoke it subsequently."); Annotation, *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Insured as Waiver or Estoppel as Regards Defense of Noncoverage or Other Defense Existing at Time of Accident*, 38 A.L.R.2d 1148, 1150 (1954)("The general rule is this: a liability insurer, by assuming the defense of an action against the insured, is thereafter estopped to claim that the loss resulting to the insured from an adverse judgment in such action is not within the coverage of the policy, or to assert against the insured some other defense existing at the time of the accident."). This rule is based upon the insurer's conflict of interest: the insurer is defending the insured in a lawsuit while simultaneously formulating its defense against the insured for noncoverage. *Wilkinson*, 601 S.W.2d at 522. The main reason for this rule, known in Texas as the *Wilkinson* exception, is elucidated in *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991) as follows:

Insurers are estopped to deny coverage to their insureds in certain circumstances. The paradigm estoppel situation occurs when the insurer assumes the insured's defense of a claim arguably not covered by the policy without reserving its right to deny coverage. After losing the litigation, the insurer refuses to pay the claimant on the ground of non-coverage and suggests that the claimant collect from the insured.

Estoppel is predicated upon the insurer's conflict of interest: it is too likely to be defending the insured in the lawsuit while at the same time formulating policy defenses to deny coverage.

■ In an attempt to avoid this conflict of interest which gives rise to estoppel, an insurer may undertake the insured's defense and later deny coverage if it "reserves its rights" by advising the insured that it may interpose a policy defense following adjudication of the claimant's suit against the insured. *Aries Marine Corp.*, 932 F.2d at 445; *Rhodes*, 719 F.2d at 120; *see State Farm Lloyds, Inc.*, 791 S.W.2d at 551. This is a proper course of action only when the insurer has a good faith belief that the complaint alleges conduct which may not be covered by the policy. *Rhodes*, 719 F.2d at 120. In such a situation, the reservation of rights will not breach the duty to defend if timely notice of intent to reserve rights is sufficient to inform the insured of the insurer's position. *Id.* Upon receiving notice of the reservation of rights, the insured may properly refuse the tender of defense and defend the suit personally. *Aries Marine Corp.*, 932 F.2d 442 at 445; *Rhodes*, 719 F.2d at 120.

In the instant case, we find that Appellant did not breach its duty to defend the Barrett defendants by refusing to tender an unconditional defense. Appellant was faced with Appellee's second amended petition alleging pilot negligence, which was not covered by the policy, and sale of contaminated aviation fuel and oil, which was covered by the policy. Had Appellant tendered an unconditional defense, all policy defenses, including noncoverage, would be waived or Appellant would be estopped from raising them. *See Wilkinson*, 601 S.W.2d at 521–22; *State Farm Lloyds, Inc.*, 791 S.W.2d at 550.

■ We note, however, that the trial court's order does not state the specific grounds upon which summary judgment was granted. When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Rogers*

*v. Ricane Enter. Inc.*, 772 S.W.2d 76, 79 (Tex.1989). As such, Appellant must establish that each independent argument advanced in Appellee's motion is insufficient to support the judgment. *Hernandez v. Kasco Ventures, Inc.*, 832 S.W.2d 629, 632 (Tex. App.—El Paso 1992, no writ); *Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889, 891 (Tex.App.—El Paso 1983, no writ).

■ Appellant next attacks Appellee's third ground for summary judgment, contending that it did not engage in any conduct which created a waiver or estoppel. Appellee, however, avers that "[b]y continuing to investigate, by acting on behalf of the Barrett defendants and by conducting settlement negotiations and discussions even after its insureds refused to sign a reservation of rights agreement permitting only a conditional defense, American Eagle waived all of its policy defenses." We find no waiver or estoppel.

"[T]he insurer's participation in conferences looking toward settlement does not estop the company from denying liability, nor constitute a waiver of a defense. . . ." 16C JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 9365, at 559 (Walter F. Berdal ed., 1981); *see Aries Marine Corp.*, 932 F.2d at 445 ("We have found no authority for the proposition that an insurer's participation in settlement negotiations, where the insured has retained independent counsel, is tantamount to assuming the assured's defense."); *Wilkerson v. Maryland Casualty Co.*, 119 F.Supp. 383, 386 (E.D.Va.1953)(negotiations by insurer for possible settlement held not to constitute waiver of insurer's rights), *aff'd*, 210 F.2d 245 (4th Cir.1954); *Jacksonville Adjustment Bureau v. Nat'l Ben Franklin Fire Ins. Co.*, 1 F.2d 800, 801 (S.D.Fla.1924)(insurer's negotiations for settlement held not to give rise to estoppel).

■ Moreover, Appellee did not offer summary judgment proof establishing the elements of waiver or estoppel. Waiver requires the voluntary surrender of a known right. *See Utilities Ins. Co. v. Montgomery*, 134 Tex. 640, 644, 138 S.W.2d 1062, 1064 (Tex.1940); *State Farm Lloyds, Inc.*, 791 S.W.2d at 551. Estoppel requires a showing

that the insured was prejudiced by the conduct of the insurer. *See Employers Casualty Co. v. Tilley*, 496 S.W.2d 552, 560 (Tex. 1973). Nothing in the record indicates that Appellant voluntarily surrendered a known right[5] or that the Barrett defendants were harmed or prejudiced by the conduct of Appellant. Any attempt by Appellant to settle the case could do nothing but benefit the Barrett defendants.

Appellee's fifth ground for summary judgment alleges that "American Eagle's breach of its policy obligations prevents it from collaterally attacking the Judgment against its insureds." Having found that Appellant did not breach its duty to defend, we find that the trial court erred by granting summary judgment as to this ground.

 Moreover, Appellant is not collaterally attacking the judgment in the damages case. A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *Employers Casualty Co. v. Block*, 744 S.W.2d 940, 943 (Tex.1988); *Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). Appellant is not attacking the judgment in the damages case. Appellant is simply asserting that the judgment does not trigger coverage under condition five of the policy, the "no-action clause", which provides, in pertinent part:

No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been fully determined by judgment against the insured after **actual trial** or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. [Emphasis added].

In *Block*, the Supreme Court addressed issues similar to that of the instant case. The case involved a claim for insurance proceeds resulting from an alleged breach of an insurance contract. The trial court granted the homeowners' motion for directed verdict in regard to the insurer's wrongful failure to defend, but granted the insurer's motion for judgment notwithstanding the verdict and rendered a take-nothing judgment against the homeowners. The court of appeals reversed and rendered, holding that once the issue of wrongful failure to defend was determined against the insurer, the agreed judgment between the insured and the homeowners could not be collaterally attacked.

The salient facts of *Block* are as follows: In 1977, Coating Specialists Inc., (CSI) installed a monoflex roof on a house in San Antonio, Texas. The Blocks purchased the home in February 1978. In August of 1979, the Blocks discovered that the roof was leaking. CSI repaired the roof in 1979. No further leaking problems occurred until August 1980 when hurricane Allen caused heavy rainfall. Although the Blocks subsequently had their roof inspected and tried to have the leaking stopped, they were unsuccessful. In August of 1981, an inspector informed them that the roof needed to be repaired due to leaks which had allowed water to collect in the insulation and exterior walls of their house.

In 1982, the Blocks brought an action against CSI under the Deceptive Trade Practices Act and for breach of express and implied warranties. CSI had a Texas multi-peril policy of insurance issued by Employers Casualty Company (Employers Casualty). The policy insured CSI for property damage occurring between August 1, 1980 and August 1, 1981. CSI notified Employers Casualty of the suit, but Employers Casualty refused to defend on the ground that the damaging event had not occurred during the policy period.

Thereafter, the Blocks and CSI entered into a settlement agreement whereby an agreed judgment was rendered in favor of

---

5. To the contrary, the summary judgment evidence established Appellant's desire to reserve its right to contest coverage at a later date.

the Blocks. The agreed judgment also recited that the Blocks' house was damaged as a result of an occurrence on August 6, 1980, and that the damages were sustained as a result of the breach of warranties by CSI.

CSI then filed suit against Employers Casualty, with the Blocks intervening as judgment creditors, for breach of the insurance contract alleging a wrongful failure to defend. Following a bench trial, the trial court held that Employers Casualty was liable for the costs CSI incurred in defending the Blocks' suit and for the damages sustained by the Blocks. However, at a subsequent hearing on a Motion for Judgment, the trial court determined that CSI was required to prove the reasonableness of the agreed judgment, and rendered judgment that the Blocks should take nothing. The trial court granted both parties' motion for new trial.

CSI settled its claim against Employers Casualty for wrongful refusal to defend, and the Blocks proceeded to trial against Employers Casualty as judgment creditors and assignees of CSI. The issue before the trial court was the reasonableness of the damages recited in the agreed judgment. The jury answered issues finding the amounts reasonable. Employers Casualty filed a motion for judgment non obstante veredicto alleging that there was no jury finding that the damages in the agreed judgment were covered by the insurance policy. After notice and hearing, the trial court granted the motion and rendered judgment for Employers Casualty and that the Blocks take nothing.

The court of appeals held that once it was determined that Employers Casualty wrongfully failed to defend its insured, Employers Casualty was barred from collaterally attacking the final agreed judgment. The court further determined that those matters recited in the agreed judgment were binding and conclusive as against Employers Casualty in the present suit. Therefore, because the agreed judgment recited that the damage occurred on August 6, 1980, the court of appeals held that Employers Casualty could not contest that fact in this proceeding. The court of appeals further held that there was sufficient evidence to support an implied finding that the damaging event occurred within the coverage period.

The Supreme Court disagreed with the court of appeals conclusion that the recitation in the agreed judgment that the damage resulted from an occurrence on August 6, 1980 was binding and conclusive against Employers Casualty in the present suit, finding that the questions of liability and of coverage were separate and distinct:

> Since the agreed judgment between the Blocks and CSI does not establish coverage, Employers Casualty is free to contest coverage in the present suit since this does not constitute a collateral attack on the liability judgment. Whether the doctrine of collateral estoppel applies to a specific issue depends upon whether the fact determined in the prior suit was essential to the judgment in the prior suit, and whether the necessary requirement of privity exists between the parties. In the instant case, the recitation in the agreed judgment that the 'Blocks sustained property damage to their residence as a result of an occurrence on August 6, 1980' was not essential in determining CSI's liability, and therefore was not a material issue in the agreed judgment. Likewise, in light of the fact that the respective positions of CSI and Employers Casualty regarding coverage were in conflict, no privity existed between the parties, thus precluding the application of the collateral estoppel doctrine. Therefore, we conclude that Employers Casualty should not be precluded from litigating the **issue of coverage** in the present case.

*Block,* 744 S.W.2d at 943 (emphasis added) (citations omitted). However, the Texas Supreme Court has recently disapproved of *Block* to the extent damages may be binding. *See State Farm Fire & Casualty Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex.1996)("In no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee.").

Finally, we find that fact issues exist as to whether there has been an 'actual trial', as that term is defined in the insurance policy.

Certainly, the covenant not to execute could have turned the damages trial into something less than a vigorous contest.[6] Indeed, the whole purpose of the covenant not to execute was to find a way to recover against Appellant. "Manifestly, the term 'judgment following actual trial' relates to an entirely different judicial proceeding-presupposing, as it does, a contest of issues leading up to final determination by court or jury, in contrast to a resolving of the same issues by agreement of the parties; i.e., without a contest." *Wright v. Allstate Ins. Co.*, 285 S.W.2d 376, 379–80 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.). Moreover, the *Gandy* court rejected shenanigans similar to that in the instant case. *Gandy*, 925 S.W.2d at 714. ("Balancing the various considerations we have mentioned, we hold that a defendant's assignment of his claims against his insurer to a plaintiff is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim. We do not address whether an assignment is also invalid if one or more of these elements is lacking."). Accordingly, we sustain Appellant's Point of Error No. One.

Having sustained Appellant's Point of Error No. One, and further not having to reach any remaining points, we reverse the judgment of the trial court and remand the cause for a new trial.