COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

PERRY J. FLOWERS,                                          )

                                                                              )           
No.  08-00-00418-CV

Appellant,                          )

                                                                              )                 Appeal from the

v.                                                                           )

                                                                              )               
44th District Court

SUN NLF LIMITED PARTNERSHIP,                 )

                                                                              )           
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# 00-05728-B)

                                                                              )

 

O
P I N I O N

 

Appellant Perry J.
Flowers (AFlowers@) appeals from the trial court=s granting of summary judgment for Appellee Sun NLF Limited Partnership (ASun NLF@)
and contends that the existence of material fact issues preclude the summary
judgment.  We affirm.

PROCEDURAL
BACKGROUND








Alleging Sun NLF
breached an oral agreement, Flowers filed a petition in the County Court at Law
of Dallas County (Cause No. 00-98-12077-B) on December 9, 1998. 
He asserted in the petition that Sun NLF had given him the right of
first-refusal to purchase the property at the intersection of Wheatland and
Lancaster roads in the City of Dallas (Aproperty@), and sought to recover in quantum meruit the value of services performed to maintain the
property or 15 percent of the sale price. 
Almost three months later on February 23, 1999, he filed suit in the
trial court below and claimed ownership of the property (description attached
same as one for Cause No. 00-98-12077-B) through adverse possession.

Sun NLF filed its
motion for a regular summary judgment on February 10, 2000, and Flowers filed
his response on March 8, 2000.  The trial
court signed the order granting the summary judgment only on Flowers=s adverse possession claim on March 10,
2000.  Thereafter, the trial court
severed the portion of the case that the summary judgment had been granted on
from the other causes of action.[1]

SUMMARY
OF THE EVIDENCE[2]

On June 27, 1977, Flowers
agreed to lease from James F. Mason a tract of land in Dallas County described
on the signed written lease agreement as approximately 151 acres on the north
side of LBJ Freeway (I-635/20) at Lancaster Road (S.H. 342)(northwest corner).  In his petition in the county court at law
(98-12077-B), Flowers alleged that Mason and he also entered into an oral
contract in 1978, where Flowers would manage the property and also be given
right of first refusal to purchase the property.








At the time of the
lease, Flowers said in his deposition that he and his father had been using the
land to hunt, and he wanted to put horses and cattle on it, as did Mason for
purposes of tax exemption.  The property
had a rundown shack with trash around it and a few isolated pieces of
fencing.  Mason and he discussed putting
the property in a working condition, and Flowers said he removed the trash from
the property and put up fences for the cattle, even if it was not required from
him.  Later on, Mason asked Flowers to
also clean the house to avoid condemnation from the city.  Although Mason was supposed to pay Flowers
for the fence and clean-up of the trash and the house, Mason never compensated
him.  Flowers did not pay the property
taxes or insurance premiums and was ignorant of the party responsible for those
payments.

Flowers began to
feel he owned the land in 1979, because the city was sending him notices on the
property and he had not yet been paid for all the improvements.  Flowers said he never bluntly or specifically
told Mason he was asserting ownership to the property or sent a letter and
instead told Mason verbally that he would not leave the property until he had
been paid.  At least around 1980, he
would not have taken possession of the property, if he had been paid.  Mason stated in his affidavit that Flowers
never tried to keep him or his agents away from the property nor did Flowers
notify him of his adverse ownership interest. 
Mason also denied that he had given to Flowers a right of first refusal
to purchase the property or a 15 percent commission on the property=s sales price.  Flowers admitted in his deposition that he
and Mason had not agreed upon a specific percentage for the commission but that
he had thought 15 percent was a fair price when he pleaded to that figure in
the petition:

A:         I=m
not sure what the percentage was, but I thought about 15 or 20 percent, so I
put the lowest of my figures on there, which was 15.

 








Mason sold various
parcels of the property from 1980 to 1986. 
Flowers was aware of transactions over the property, since a Mercantile
Bank agent came to inspect the property on a note held against it.  Flowers did nothing to prevent Mercantile
Bank from inspecting the property, because other parcels of land were mingled
with his and he was only concerned with the land surrounding his immediate homeplace.  He also
did not stop Pilot company from building a truck stop on the corner of
Lancaster and LBJ around 1994.  Proximate
to that time, he stopped maintaining one of the tracts at Wheatland and
Lancaster and left it to the person claiming that tract, because it was too
much trouble to keep mowing it.  Parts of
the property had been leased to sign companies for billboards since 1977, and
Flowers asked his attorney to investigate the situation about three to four
months before his deposition on October 13, 1999.

Sun NLF obtained
the property on September 6, 1994, and Flowers did not contest the company=s ownership.  Flowers and Sun NLF arranged for Flowers to
continue maintaining and occupying the land without paying rent until Sun NLF
sold the land.  Flowers stated that he
agreed, because Sun NLF promised to pay him a commission if the property was
sold.  Flowers also offered to purchase
the property from Sun NLF in letters written on March 21, 1996, January 24,
1997, July 9, 1997, and February 4, 1998. 
On February 20, 1998, Flowers also wrote to inform Sun NLF of damage
caused by fuel spillage from an eighteen-wheeler truck.  

On November 11,
1998, Sun NLF wrote to Flowers to confirm that he had a month-to-month lease
since 1994, with no written lease or rent being assessed, and also informed
Flowers that the company was expecting to sell the property shortly.  Two months later, on January 26, 1999, Sun
NLF terminated the lease with a notice of thirty days.

DISCUSSION

Sun NLF asserted
in the motion for summary judgment that Flowers did not establish the element
of hostile claim, because Flowers had permissive use of the property.








Summary
Judgment Standard of Review

In reviewing a
traditional summary judgment, the moving party has the burden of establishing
that no material fact issue exists and it is entitled to judgment as a matter
of law.  Tex.R.Civ.P. 166a(c);  M.D.
Anderson Hosp. and Tumor Inst. v. Willrich, 28
S.W.3d 22, 23 (Tex. 2000).  In determining whether a disputed material
fact issue precludes summary judgment, the court must take evidence favorable
to the non‑movant as true and indulge every
reasonable inference in favor of non‑movant.  Nixon v. Mr. Property Mgmt. Co., Inc.,
690 S.W.2d 546, 548‑49 (Tex.
1985).  Because the granting of summary
judgment is a question of law, we review the trial court=s
decision de novo.  Natividad v. Alexsis,
Inc., 875 S.W.2d 695, 699 (Tex.
1994).  If the trial court does not
provide findings or grounds for summary judgment, as here, we may affirm the
judgment on appeal if any of the theories advanced are meritorious.  State Farm Fire & Cas.
Co. v. S.S. & G.W., 858 S.W.2d 374, 380 (Tex.
1993); American Eagle Ins. Co. v. Nettleton, 932 S.W.2d 169, 174 (Tex.App.--El Paso 1996, writ denied).

Elements
of Adverse Possession








Adverse possession
is statutorily defined as Aan
actual and visible appropriation of real property, commenced and continued
under a claim of right that is inconsistent with and is hostile to the claim of
another person.@  Tex.Civ.Prac.&Rem.Code
Ann. '
16.021(1)(Vernon 1986).  To establish title by adverse possession, a
party must show possession, use, a hostile claim, exclusive domination, and
appropriation within the statutory time limit, or ten years in this case.  Tex.Civ.Prac.
&Rem.Code Ann. '
16.026(a)(Vernon Supp. 2002); Wright v. Wallace, 700 S.W.2d 269, 270 (Tex.App.‑‑Corpus Christi 1985, writ ref=d n.r.e.).  The possession must have been for a long
enough period of time to cut off the true owner=s
right of recovery as well as visible, Acontinuous
. . . notorious, distinct and hostile [i.e., adverse], and of such character as
to indicate unmistakably an assertion of a claim of exclusive ownership in the
occupant.@  Heard v. State, 146 Tex. 139, 204
S.W.2d 344, 347-48 (1947).  Even if  a claimant lived continuously on the property
for longer than the statutory ten‑year period, the usage of the land must
constitute an actual and visible appropriation of the land such that the true
owner is given notice of a hostile claim. 
Orsborn v. Deep Rock Oil Corp.,
153 Tex. 281, 267 S.W.2d 781, 785‑87
(1954).

The evidence is
undisputed that Flowers entered the property in 1977 with then-owner Mason=s permission under a lease
agreement.  In order to assert adverse
possession of the land, the adverse claimant who begins entry upon the disputed
land with the permission of the record owner must give notice of the hostile
nature of the possession.  Wright,
700 S.W.2d at 271.

There is no
evidence of when Flowers=s
adverse possession of the land began. 
Flowers testified that he orally communicated to Mason after a fire
occurred on the property:

A:         I don=t
know if I told him I was taking it for myself. 
. . .  I wrote him a letter to
inform him that there was a fire and that the fence that I had put up and the
trees and things on the place had burned real bad and the place was a mess.

 

                                                              .               .               .

 

Q:        Did you write him or pick up the phone
and call him and say, Mr. Mason, this is now my property, it no longer belongs
to you, Mr. Mason? 

A:         I don=t
think I told him that in those words.

Q:        What words did you use?

A:         I let him know that the property -- and
I said -- I=m pretty
-- I know -- I=m pretty
sure I said our property, you know.  That
our property has burned and there=s
a lot of damage to it, and I asked him to get in touch with me.  And he did not return a letter nor did he
return a call.








Q:        In fact, all the way up until today you
never picked up the phone and called Mr. Mason and said I=m now claiming this as my property?

A:         I don=t
know if I told him that.

Q:        Nor did you write him a letter saying,
Mr. Mason, this is no longer your property, this is my property.  You=ve never done that all the way up until today.

A:         I don=t
know if I=ve ever done that . . . .

 

                                                              .               .               .

 

A:         And I=m
not sure that I told him to the effect I=m
just taking the property and you=re
out.  I don=t
think I put it quite that bluntly.

But I think I did
tell this man that I was not -- and I know I did that --that I=m not going anywhere because I feel
this property is mine because I have money and time tied up in it and I=m not getting paid and I=m going to take the property.  And I=m
pretty sure I said that basically in the same type of manner.

And I=m not talking about blind-siding and
conniving or scheming.  I wanted my
money.  I asked for my money.  I sent letters to whatever, and the proof was
in the pudding.

 








Adverse possession
could not have commenced in 1977, because Flower=s
entry was permissive, nor does it appear that Flowers repudiated Mason=s title and commenced an open and
notorious claim nor impart any constructive notice of such, even viewing the
evidence in Flowers=s
favor.  Flowers=s
only hostile act was to tell Mason that he would remain on the property until
he had been paid for the improvements made with Mason=s
agreement, such as putting up a fence and repairing an existing shed and
barn.  Flowers did not pay the property
taxes and insurance premiums or attempt to exclude buyers of the property, such
as the Mercantile Bank agent, the Pilot company, and the claimant of a tract at
the corner of Lancaster and Wheatland. 
Until a few months before his deposition, Flowers did not inquire into
the active rental of portions of the property to sign companies for billboards
since 1977.  In fact, when he learned
that Sun NLF had acquired the property, he recognized Sun NLF=s ownership of the property by agreeing
to be a tenant without paying rent and also offering to purchase parts of the
property four times from 1996 through 1998. 
There is no evidence that Flowers asserted a hostile, adverse claim
against Mason and Sun NLF during his possession of the property, and Flowers
has failed to present rebutting evidence. 
Summary judgment was proper, and we overrule his sole issue.

The judgment of
the trial court is affirmed.

 

 

 

August
22, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Do Not Publish)











[1]
Although unclear in the record, it appears that Flowers=s
breach of contract and adverse possession causes of action were consolidated,
and summary judgment was not granted on the breach of contract claims.





[2]
Since Flowers untimely filed his response two days before the order granting
summary judgment for Sun NLF was signed on March 10, 2000, and there is no
order in the record granting Flowers leave to file the response late, we must
consider only the evidence from Sun NLF=s
motion for summary judgment.  Tex.R.Civ.P. 166a(c); Benchmark Bank
v. Crowder, 919 S.W.2d 657, 663 (Tex.
1996).